## CENTENNIAL BREWING CO., Respondent, v. ROULEAU ET AL., Appellants.

(Nos. 3,409, 3,503.)

(Submitted September 18, 1914.   Decided October 19, 1914.)

[143 Pac. 969.]

*Landlord and Tenant—Unlawful Detainer—Complaint—Termination of Tenancy—Notice—Insufficiency—Repairs and Improvements by Tenant—Estoppel—Treble Damages—Discretion.*

Landlord and Tenant—Unlawful Detainer—Complaint.
1.   The complaint in an action for unlawful detainer brought under section 7271, subdivision 1, Revised Codes, need not allege that plaintiff was entitled to the possession of the premises at the time of the commencement of the action, or gave notice, or demanded possession before bringing action.

Same—Expiration of Lease—Duty of Tenant.
2.   Upon the expiration of the term of his lease, it at once becomes the tenant's duty to restore possession to his landlord, without demand or further notice.

[As to when a tenant is guilty of holding over, see note in 70 Am. St. Rep. 533.]

Same—Complaint.
3.   In an action for unlawful detainer brought under subdivision 1 of section 7271, Revised Codes, the complaint must allege specifically that the holding over by defendant is without permission of plaintiff.

Same—Void Lease—Status of Tenant.
4.   One who enters into possession of real property under a lease rendered void by the statute of frauds, becomes a tenant at will, which tenancy may be terminated by giving the notice prescribed by section 4502, Revised Codes.

Same—Void Lease—Repairs and Improvements by Tenant—Estoppel.
5.   *Quaere:* Where tenants had entered into possession of premises after purchasing the business conducted therein from another lessor, under a lease alleged to have been made by them with the owner for a term of two years, which the latter, however, failed to sign, and thereupon made repairs and improvements upon the property, with knowledge on the part of the owner that they were doing so on the assumption that they could have the lease for two years, was the agreement binding upon the owner even though it had not been fully executed?

Same—Termination of Tenancy—Insufficient Notice.
6.   A notice to a tenant that at a day named a certain person would become his landlord and that he should "take due and timely notice and act accordingly," is not such a notice as is required by section 4502, Revised Codes, to be given by a landlord for the purpose of terminating the tenancy.

Same—Treble Damages—Discretion.
7.   Under section 7283, Revised Codes, when an unlawful detainer has been proven and damages have been awarded, the trial court has not

any discretion, but must render judgment for treble the amount of the award.

[As to what is unlawful detainer, see note in 120 Am. St. Rep. 32. As to right to civil action for forcible entry and detainer, see note in 121 Am. St. Rep. 369.]

*Appeals from District Court, Silver Bow County; Michael Donlan, Judge.*

ACTION by the Centennial Brewing Company against O. Rouleau and Louis Tetreault. From a judgment for plaintiff and from an order denying their motion for a new trial in cause No. 3,409, defendants appeal. In cause No. 3,503, plaintiff appeals from the judgment. Judgment reversed and cause remanded for a new trial.

(Cause No. 3,409.)

*Mr. John Lindsay, Messrs. Canning & Geagan* and *Mr. Henry C. Smith,* for Appellants, submitted a brief; *Mr. Smith* argued the cause orally.

Section 7271, Revised Codes, is highly penal, and must be strictly construed. One does not become guilty of an unlawful detainer until demand is made and he refuses to surrender possession. (*Finley* v. *Magill,* 57 Mo. App. 481; 19 Cyc. 1147.) "It is of the essence of an unlawful detainer that possession is refused on demand in writing." (*Spear* v. *Lomax,* 42 Ala. 576.) "In an action for unlawful detainer under the statute, the plaintiff must aver and prove a demand in writing for the possession of the premises which he seeks to recover." (*Doss* v. *Craig,* 1 Colo. 177.) Under it, it is necessary that the complaint allege that the plaintiff is entitled to possession at the time of the commencement of the action, in set terms (*Kennedy* v. *Dickie,* 27 Mont. 70, 69 Pac. 672), or it must state facts which show such right of possession. (*Bryan* v. *Smith,* 10 Mich. 229.)

A demand of possession must be made by the landlord before bringing suit against his tenant for holding over. Such demand is indispensable, and is as necessary to be made before suit as that the relation of landlord and tenant should exist. (*Paul* v. *Armstrong,* 1 Nev. 82.)

It is our contention that section 7271 involves something more than a mere failure to be right with regard to a pending controversy, as, for instance, an honest dispute ·as to the terms of a lease. ''Where a party brings an action for the possession of property which he claims is being unlawfully detained from him, he must allege and prove not only that he has the right of, and is entitled to, its possession, but also that such property is being unlawfully ·detained from him after notice to quit is served as provided by law.'' (*Barnes* v. *Cox*, 12 Utah, 47, 41 Pac. 557.)

The notice in this case was of the termination of a lease under which, admittedly, the appellants were not holding. Nevertheless, appellants continued in possession and to pay rent for the premises; and no action having been taken to dispossess them until the commencement of this suit, it must be concluded that they were holding with the consent of the landlord. Where a lease has expired by its own limitations, the lessee holding over may become a tenant at will, providing such holding was with the assent of the landlord. (24 Cyc. 1040.) Under a verbal lease for more than a year, the entering lessee becomes a tenant at will. (32 Cent. Dig. (Landlord and Tenant), sec. 409.) A tenant in possession under a parol lease for two years, which is void by the statute of frauds, is a tenant at will or from year to year. (*Duke* v. *Harper*, 14 Tenn. 280, 27 Am. Dec. 462; *Talamo* v. *Spitzmiller*, 120 N. Y. 37, 17 Am. St. Rep. 607, 8 L. R. A. 221, 36 N. E. 980; *Dumn* v. *Rothermel*, 112 Pa. 272, 3 Atl. 800.) A tenant's possession, after the termination of a lease under an oral agreement for a new lease and the making of improvements, are sufficient notice of his rights as against one who has received a written lease of the premises, but who has paid no rent and expended no money under his lease. (*Morrison* v. *Herrick*, 130 Ill. 631, 22 N. E. 537.)

The verdict is defective. It should have found, in form and substance, that the appellants were guilty of ''unlawful detainer'' of the premises. (*Spellman* v. *Rhode*, 33 Mont. 21–27, 81 Pac. 395.) ''A verdict must always be responsive to, and

find upon, every issue necessary to recovery, and must support the judgment.'' (*McCleary* v. *Crowley*, 22 Mont. 245, 56 Pac. 227.) The gravamen of the action is the unlawful detainer, without the existence of which the defendant must prevail. The verdict does not declare that the plaintiff was ever entitled to possession. (*McCleary,* v. *Crowley, supra.*)

*Messrs. Chas. R. Leonard* and *Frank C. Walker,* for Respondent, submitted a brief; *Mr. Walker* argued the cause orally.

Appellants raise the point that plaintiff's complaint is defective, for the reason that there is no allegation appearing in said complaint that plaintiff ever demanded possession of the premises. In support of this counsel for appellant cite several authorities, none of which are at all in point. They have cited the case of *Doss* v. *Craig,* 1 Colo. 177. The court there said: ''In order to maintain a suit under the Act, it is absolutely and essentially necessary that the plaintiff shall first have made a demand in writing for the delivery of the premises in question. This being the law, it was the duty of the plaintiff, if such demand was made, to set it out in his petition as a substantial fact, as required in section 11 of the Act.'' From a reading of this decision, it is apparent that the Colorado statute demands specifically that a written notice be served upon the party, and that a demand be made. Not only that, but it will be seen further in the decision that the written notice must be left with the party, or there is no demand. No such provision appears in our statute, and by no rule of law can it be read into the statute when it does not appear there. Counsel also cite *Finley* v. *Magill,* 57 Mo. App. 481. A perusal of this case will show that the Missouri statute is different from the Montana statute, and therefore the case is not in point. The case of *Spear* v. *Lomax,* 42 Ala. 576, is not in point for the same reason. Counsel cite the case of *Paul* v. *Armstrong,* 1 Nev. 82. This case, however, comes within a provision similar to subdivision 2 of section 7271 of our Code, and applies only when the party fails to pay rent when due. Our statute says that upon failure to pay rent,

written notice of three days is necessary. As we have said before, however, subdivision 1 of the same section makes no such provision. Counsel also cite the case of *McCleary* v. *Crowley,* 22 Mont. 245, 56 Pac. 227. This is a case of forcible detainer, and our statute upon forcible detainer, like subdivision 1 of the unlawful detainer statute, requires no notice and no demand. The court in the *McCleary Case* says that the case was based upon subdivision 1 of section 2081, and that a demand is not necessary. If the forcible detainer statute is silent as to notice and demand, therefore as the court says that none be required, why should notice and demand be required under the unlawful detainer statute, this statute also being silent as to demand and notice?

The next question raised by appellants is that the verdict is defective, in that it is not responsive to and does not find upon every issue necessary to recover. In support of their contention they cite two Montana cases, both of which cases hold squarely against the principle which counsel hold they stand as authority for. The case of *Spellman* v. *Rhode,* 33 Mont. 21, 81 Pac. 395, holds that a general verdict finding for plaintiff is sufficient. *McCleary* v. *Crowley, supra,* decides the same principle of law, and says that a general verdict is sufficient. In the case at bar, the verdict found for the plaintiff and against the defendant, and if there was nothing further in the verdict, that alone would be sufficient. However, the verdict does find that the defendants held without right. That "without right" means unlawfully, we submit to be so clear that we shall cite no authority to support it.

(Cause No. 3,503.)

*Messrs. Chas. R. Leonard, Frank C. Walker* and *Earle E. Genzberger,* for Appellant, submitted a brief; *Messrs. Walker* and *Genzberger* argued the cause orally.

Under a statute of California identical with our section 7283, Revised Codes, which was construed in the case of *Tewksbury* v. *O'Connell,* 25 Cal. 262, it was held that if a complaint in an

action arising under the statute concerning forcible entry and detainer contains proper averments of damages sustained, and plaintiff recovers, the damages are to be assessed by the jury, or by the court acting without a jury, according to the facts of the case, and may include the rents and profits, and when this is done, it is made the duty of the court to treble such damages. (See, also, *Missoula Electric Co.* v. *Morgan,* 13 Mont. 394, 34 Pac. 488; *Rimer* v. *Blasingame,* 94 Cal. 139, 29 Pac. 857; *Eccles* v. *Union Pacific Coal Co.,* 15 Utah, 14, 48 Pac. 148.)   Other jurisdictions construing similar statutes have held it imperative that double and treble damages be awarded by the court in actions for unlawful detainer, where the court or jury found in favor of the plaintiff and assessed the damages.   The Missouri court of appeals, under a Missouri statute requiring the court in actions for unlawful detainer to give judgment for restitution of the premises and double the sum assessed as damages, held that it is imperative upon the court to double the damages assessed on a finding for the plaintiff, even though not specifically prayed for in the complaint.   (*Bierkenkamp* v. *Bierkenkamp,* 88 Mo. App. 445; *Hadley* v. *Bernero,* 97 Mo. App. 314, 71 S. W. 451.)   The supreme court of Washington has repeatedly held that damages assessed by the jury must be double in actions of this character.   (*Decker* v. *Verloop,* 73 Wash. 10, 131 Pac. 190; *Hinckley* v. *Casey,* 45 Wash. 430, 88 Pac. 753; *Hart* v. *Pratt,* 19 Wash. 560, 53 Pac. 711; *Bond* v. *Chapman,* 34 Wash. 606, 76 Pac. 97.)   Among other courts taking this view are those of Michigan and Oklahoma.   (*Hitchcock* v. *Pratt,* 51 Mich. 263, 16 N. W. 639; *Chisholm* v. *Weise,* 5 Okl. 217, 47 Pac. 1086.)

*Mr. John Lindsay,* for Respondents, submitted a brief; *Mr. Henry C. Smith,* of Counsel, argued the cause orally.

The hiring of the premises by Rouleau constituted a lease for one year from on or about March, 1912, so that the second lease to the Centennial Brewing Company was a nullity so far as Rouleau and Tetreault were concerned.   Section 5228, Revised Codes, reads as follows: "A hiring of real property, other than lodgings and dwelling-houses, in places where there is no usage

on the subject, is presumed to be for one year from its commencement, unless otherwise expressed in the hiring.'' (*Brill* v. *Carsley*, 2 Cal. App. 331, 84 Pac. 57.) And the notice of November 29, 1912, was of no effect, because the statement therein contained, ''Your hiring will cease and terminate on December 31, 1912,'' was unwarranted; and this action was begun before the Rouleau and Tetreault lease had expired. There is not anything in the record to warrant the conclusion that respondents' lease terminated on December 31, 1912; and there can be no presumption that it was a lease from month to month, because Lavell's own testimony dispels such presumption and shows that it was ''a hiring without definite terms,'' to quote the language of the court in *Brill* v. *Carsley, supra*.

No damages were proven and no rent was due; consequently there was not anything to treble under section 7283, Revised Codes. The statute expressly declares that the damages must be ''alleged in the complaint and proved on the trial.''

The complaint does not state a cause of action. It fails entirely to allege, either directly or indirectly, that plaintiff is entitled to the possession of the premises. (*Kennedy* v. *Dickie*, 27 Mont. 70, 77, 69 Pac. 672.)

The relation of landlord and tenant must exist before this action can be maintained. (24 Cyc. 1407, 1418, 1421; *Lantry* v. *Wallace*, 97 Fed. 865, 38 C. C. A. 510; *Pico* v. *Cuyas*, 48 Cal. 639; *Mason* v. *Delancy*, 44 Ark. 444; *Taylor* v. *Monohan*, 71 Ky. 238; *Smith* v. *Killeck*, 10 Ill. 293; *Gies* v. *Storz Brewing Co.*, 75 Neb. 698, 106 N. W. 775; *Colorado etc. Building Assn.* v. *Harvey*, 23 Ky. Law Rep. 1009, 64 S. W. 676; *Marvel* v. *Redman*, 2 Ind. 268; *Hunter* v. *Maanum*, 78 Wis. 656, 48 N. W. 51; *Gulledge* v. *White*, 73 Tex. 498, 11 S. W. 527.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by the plaintiff for an alleged unlawful detainer by the defendants of a building in the city of Butte, described as No. 117 East Park Street, and for damages for its detention.

The complaint alleges that on the —— day of December, 1912, Geoffrey Lavell, the owner thereof, leased the building to the plaintiff for a term of one year, beginning on January 1, 1913, and ending December 31, 1913, at a rental of $1,200 for the term, payable monthly in installments of $100 per month; that in December, 1911, Lavell had leased the premises to one George Charpentier for a term beginning on January 1, 1912, and ending on December 31, 1912; that Charpentier held possession under this lease until February, 1912; that he then sold the saloon business conducted by him in the building and assigned the lease to the defendant Rouleau, who, together with the defendant Tetreault, thereafter held possession of the premises and paid the stipulated rental to Lavell; that on November 29 and 30 he caused to be served upon the defendants Rouleau and Tetreault the following notice in writing: "You and each of you are hereby notified by Geoffrey Lavell, the undersigned and the owner of those certain premises now occupied by you and used in the conduct of a saloon therein and designated and numbered 117 East Park Street, Butte, Montana, that he has granted a lease on said premises to the Centennial Brewing Company, a corporation, for the term of one year, with the privilege of two years, commencing on January 1, 1913, and the undersigned therefore hereby notifies you that your hiring of said premises will cease and terminate on December 31, 1912, and that commencing with January 1, 1913, the said Centennial Brewing Company will be entitled to enter into possession thereof under the lease aforesaid, as to all of which you will take due and timely notice and act accordingly"; "that notwithstanding the termination of the said Charpentier lease on December 31, 1912, under and by virtue of which the defendants held possession of said premises, they still continue in possession thereof, and have refused and still refuse, to recognize the right of plaintiff to possession thereof, and during all of the time since the commencement of the plaintiff's lease have failed and refused to surrender possession of said premises to the plaintiff, by reason whereof the plaintiff has been damaged

49 Mont.—32

in the sum of three hundred ($300) dollars, and that the plaintiff will continue to suffer damage in the sum of $100 per month for each and every month that the said defendants continue in possession of said premises."

Their general demurrer having been overruled, the defendants filed their answer which, while admitting that they were in the possession of the premises and that Lavell had served upon them the notice set out in the complaint, by denials and counter-averments joined issue upon all the other allegations of the complaint. They further averred that they had been in possession of the property since April 1, 1912, paying the rent therefor, and that they had not been notified to surrender possession to anyone. This averment was denied by reply. At the trial, the court having denied defendants' motions for a nonsuit and a directed verdict, directed a verdict for the plaintiff. The verdict assessed the damages at $400. Counsel for the plaintiff requested the court to direct judgment for treble the amount of the award. This the court refused to do and ordered judgment for restitution of the premises and the amount found by the jury. The defendants have appealed from the judgment and order denying their motion for a new trial. The plaintiff has appealed from the judgment.

The overruling of the demurrer is assigned as error. Defend-
[1]   ants contend that the complaint is insufficient (1) in that it is not alleged therein that the plaintiff was entitled to the possession of the premises at the time of the commencement of the action, and (2) in that it is not alleged that plaintiff demanded possession of the defendants before bringing the action. The action was brought under section 7271 of the Revised Codes, which so far as is pertinent here, declares: "A tenant of real property or mining claim for a term less than life, is guilty of unlawful detainer: 1. When he continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to him, without the permission of the landlord, or the successor in estate of his landlord, if any there be, but in case of a tenancy

at will, it must first be terminated by notice, as prescribed in
the Civil Code." The provisions of the Codes of which this sec-
tion is a part (sections 7269–7288) deal with the subject of
summary proceedings to obtain possession of real property.
They specifically authorize actions for forcible entries and de-
tainers, and unlawful detainers, and define the circumstances
under which each one lies. The circumstances under which the
former two actions may be maintained, and the allegations of
fact necessary to be made, are discussed somewhat at length in
*Kennedy* v. *Dickie,* 27 Mont. 70, 69 Pac. 672, and *Spellman* v.
*Rhode,* 33 Mont. 21, 81 Pac. 395. What is said in these cases
has no pertinency here, because section 7271 deals wholly with
the relation of landlord and tenant. The allegations necessary
to sustain an action in either of the former cases being in-
appropriate to sustain the latter, we must look exclusively to
the latter to ascertain what the plaintiff must allege. Upon an
analysis of this section we find it is necessary for it to appear
(1) that the plaintiff is the landlord, or his successor in estate;
(2) that the defendant became possessed of the property by
virtue of a lease for a term less than for life; (3) that he has
continued his possession, in person or by subtenant, after the
expiration of the term specified in the lease without permission
of the plaintiff or his successor; and (4) if the tenancy is at
will, that it has been terminated by notice as prescribed by sec-
tion 4502 of the Revised Codes. Nowhere in the section, nor in
section 7276, which prescribes what must be set forth in the
complaint, is there any requirement that plaintiff allege owner-
ship or right to the possession, or that demand has been made
for delivery of possession. In contemplation of law, the right
to the possession is a necessary inference from the allegations
showing the relation of landlord and tenant, and the expiration
of the term of the lease under the stipulation in the contract
fixing the time of its duration. So, too, the right of the land-
[2] lord to be restored to possession is complete at the
expiration of the term, whether the contract of lease specifi-
cally so stipulates or not; for the expiration of the term

is notice to the lessee that his right to occupy the property has ceased, and the duty arises at once to restore the possession to his landlord, without demand or notice. Subdivisions 2, 3 and 4 of the section define the rights of the parties under the circumstances stated in them, and impose upon the landlord the duty to give notice and make demand as therein indicated; but these provisions have no relation to the rights and obligations of the parties as they exist under the circumstances covered by the provisions of subdivision 1. Under this subdivision the giving of notice of any kind or the making of a demand is not required as a condition precedent to the bringing of the action. To read the requirements of any of these subdivisions *into* subdivision 1, would be to add to the definition of unlawful detainer therein laid down elements which the legislature thought it not necessary to include. This we are not required to do.

Counsel cite several cases in support of their contention; but the provisions of the local statutes under which they arose are substantially different from ours in the requirement made by them. *Spear* v. *Lomax,* 42 Ala. 576, and *Bryan* v. *Smith,* 10 Mich. 228, are illustrative examples. For these reasons, and so far as the objections made to it avail, we think the complaint sufficient to meet the requirements of the statute.

There is another feature of it, however, to which we venture to call the attention of counsel, though they have not referred to it in their brief, *viz.,* the absence of a specific allegation that [3] the holding over by the defendants was without the permission of plaintiff. A holding over without the permission of the landlord is an essential element of the wrong defined and denounced by the statute; hence we think that to state a cause of action, the complaint should allege specifically the character of the holding, or state facts sufficient to furnish a clear inference that it is contrary to the landlord's wishes or unlawful. The character of the defendants' possession in this case is inferable— if at all—from the allegation in the latter part of the complaint that ''since the commencement of the plaintiff's lease, defend-

ants have failed and refused to surrender possession of said premises.'' Whether this allegation renders the complaint sufficient to withstand attack by general demurrer is, to say the least, doubtful. We refer to this feature of it in order to avoid the implication that we deem direct allegations on this subject unnecessary.

The next contention is that the court erred in withdrawing the case from the consideration of the jury. The evidence introduced by the plaintiff is exceedingly vague, indefinite and contradictory—so much so as to leave it uncertain whether the defendants entered into possession under the Charpentier lease or under an arrangement with Lavell, the exact nature of which is not disclosed. For the purpose of defendants' appeals, counsel have conceded that it was sufficient to make out a case for the jury. Charpentier's lease was oral, but by its terms he was to occupy the premises for a term covering the year intervening between January 1 and December 31, 1912, for a rental of $1,200, payable in installments of $100 per month on the first of each month, in advance. He paid the installments for January and February. During the month of February, Lavell found the defendants in possession, and, after some demur, accepted the rent from them, and they continued in possession. Exactly when the formal lease to the plaintiff was executed does not appear, but for present purposes it may be assumed to have been executed prior to the date of the notice set out in the complaint. If plaintiff's claim that defendants were holding under the Charpentier lease is well founded, it is only important that it does appear that plaintiff became the successor in estate to Lavell pending the term covered by it, and thus became entitled to the possession of the property at the expiration of its term. As a precautionary step to indicate to defendants that the plaintiff had been substituted as his successor, the notice by Lavell was proper. The defendants were not entitled to it, however; for, as already pointed out, it became their duty to vacate the premises upon the expiration of their term, without regard to whether Lavell was still the owner. Nothing else appearing,

the plaintiff's right to a verdict was established. The evidence introduced by the defendants, however, directly controverts plaintiff's claim and tends strongly to show that the defendants went into possession under a specific agreement with Lavell, by which he leased the building to them for two years, from April 1, 1912, to March 31, 1914, and that, relying upon this contract, they purchased Charpentier's business, which they would not have done in the absence of such agreement, because they did not care to embark in the business for the remainder of the term covered by his lease. Rouleau testified that Charpentier made an offer to sell the business to him in March, 1912; that upon ascertaining from him that the lease would expire at the end of the year, he declined to purchase it; that it was then suggested by Charpentier that Rouleau see Lavell and ascertain what prospect there was for obtaining a lease for a longer term; that he saw Lavell and having informed him that Charpentier was about to sell the business and that he (Rouleau) and his co-defendant Tetreault were willing to buy it, if they could secure a suitable lease, it was thereupon agreed by Lavell that they should have a lease for a term of two years, from April 1, 1912, for the same rental paid by Charpentier, with the privilege of a renewal for a term of three years more; that defendants thereupon made the purchase and entered into possession, thereafter making substantial repairs and permanent improvements upon the building; that though the written lease was prepared and submitted to the defendants for approval and was approved by them, Lavell failed to execute and deliver it; and that the repairs and improvements to be installed by the defendants were discussed at the time the oral contract was made, and the necessity for them, in order to conduct the business in the building, was the reason why a lease for a longer term than that under which Charpentier held was desired and granted. He related further that the rent was promptly paid; that at first Lavell declined to receive it but subsequently did so until January, 1913; that at that time an oral demand was made upon the defendants by the agent of plaintiff; that they refused to pay

the rent to it or to recognize it as their landlord; that they claimed to hold under their lease from Lavell, and were basing their right to continue in possession at the time the action was brought upon their contract with him; that after that date, upon refusal by Lavell to accept the installments of rent, defendants deposited them for the months of January and February in the Silver Bow National Bank to his credit; that subsequent installments were paid by them to the First National Bank on his account; and that Lavell stated as his reason for not executing the written lease at once that he had to leave the city but would return in a few days and attend to it.   He stated further that within a few days thereafter Lavell came into the place bringing a written lease expressing the terms which they had theretofore agreed upon, and left it; that he then said that, as the day was Sunday (which was the case) and the contract would not be valid if executed on that day, he would return and sign it on the following day; and that, returning on the following day and asking for the lease in order that he might sign it, he took it away and did not thereafter return it.   It is suggested by some circumstances disclosed in the evidence, that the real reason why Lavell finally concluded not to execute the lease was that he had ascertained that the defendants were unwilling to keep for sale the beer manufactured by the plaintiff.   This witness is corroborated in material respects by other witnesses; but even without this corroborating evidence there was presented an issue of fact calling for a finding by the jury.   For if the defendants were not holding under an assignment of the Charpentier lease as alleged in the complaint, but under the unexecuted lease, this fact was a complete defense to the unlawful detainer charged. Upon the assumption that their lease was void because not evidenced by a writing (Rev. Codes, sec. 5017), they had entered under it by permission of Lavell, and the court was not justified in concluding that they had entered under the Charpentier lease.

Other considerations aside, upon the assumption that the [4] oral lease was wholly void, we think that in correct theory the defendants became Lavell's tenants at will.  (Tiffany on

Landlord and Tenant, 106; Taylor's Landlord and Tenant, sec. 59; *Goodwin* v. *Clover*, 91 Minn. 438, 103 Am. St. Rep. 517, 98 N. W. 322; *Nickolls* v. *Barnes*, 32 Neb. 195, 49 N. W. 342; *McIntosh* v. *Hodges*, 110 Mich. 319, 68 N. W. 158, 70 N. W. 550; *Talamo* v. *Spitzmiller*, 120 N. Y. 37, 17 Am. St. Rep. 607, 8 L. R. A. 221, 23 N. E. 980.) Upon this theory, the tenancy would have been terminated by the giving of the notice prescribed in section 4502, *supra;* otherwise by express provision of section 4503 the action could not be maintained. As Lavell's successor, the plaintiff had no other or greater rights than he had. (Rev. Codes, sec. 4521.)

A question suggested by the facts appearing in the record [5] but not referred to in the briefs, is worth consideration, *viz.*, whether in view of the purchase by the defendants of the Charpentier business, their entry into possession and the installation of the repairs and improvements had in contemplation at the time, all of which acts were done upon the assumption that defendants were to have the lease, coupled with the knowledge of Lavell that they were acting upon this assumption, the agreement did not become binding upon Lavell for all purposes as fully as if the lease had been fully executed. We shall not stop to consider this feature of the case, but submit the question to counsel for such consideration as they may deem proper to give it.

It remains to inquire whether the notice set out in the [6] complaint was sufficient to terminate the tenancy of the defendants. It will be observed that it does not upon its face purport to have been authorized by the plaintiff; but, passing this, after stating the fact that the property had been leased to the plaintiff for a term beginning on the first of the following year, it conveyed notice that after that time the plaintiff would be entitled to possession, and that defendants must act accordingly. In legal effect, it amounted simply to notice that the plaintiff would become the landlord of defendants at the beginning of the year, and that they should shape their conduct in view of that fact. The statute (sec. 4502, *supra*) requires the landlord to give notice to the tenant ''to remove from the prem-

ises'' within a term specified, not less than one month. The writing was not a compliance with this requirement in either particular. That it was understood to have the purport we have given it is made entirely clear by the fact, which appears from the testimony, that on the first day of January following, the agent of the plaintiff went to the defendants and demanded orally that they pay the rent to the plaintiff or vacate the premises. The court should have submitted the case to the jury under proper instructions.

A third contention made by the defendants is, that the verdict is insufficient in form. In view of what has already been said it will not be necessary to notice this contention.

The appeal of the plaintiff presents the single question [7] whether the court erred in refusing to order judgment for treble damages. Since the case must be tried again, we shall not consider the question presented, further than to say that the provision of the statute (Rev. Codes, sec. 7283) is explicit: ''The jury, or the court if the proceeding be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, alleged in the complaint and proved on the trial, and find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent; and the judgment shall be rendered against the defendant, guilty of the forcible entry, or forcible or unlawful detainer, for three times the amount of the damages thus assessed, and of the rent found due.'' Therefore, in such cases, the court has no discretion, but must follow the mandate of the legislature here laid down. If the unlawful detainer is proven and damages are awarded, a judgment for treble the amount of the award follows as a matter of course.

The judgment and order are reversed and a new trial is ordered.

*Reversed and remanded.*

Mr. Justice Sanner concurs.

Mr. Justice Holloway, being absent, takes no part in the foregoing decision.